UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT HANSON, <br><br> Plaintiff, <br><br> v. <br><br> BLAINE COUNTY, GENE D. RAMSEY, GOODING COUNTY, SHAUN GOUGH, KEVIN WAYT, WILLIAM SHUBERT, JESUS GONZALEZ, JUDITH PETERSON, AND JOHN DOES I-X, <br><br> Defendants. | Case No. 1:16-cv-00421-BLW <br><br> MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court are Defendants' Blaine County, Gene D. Ramsey, Gooding County, Shaun Gough, William Shubert, and Jesus Gonzalez's Motion to Dismiss (Dkt. 17) and Kevin Wayt's Motion to Dismiss (Dkt. 30). The matters are fully briefed. For the reasons set forth below, the Court will grant Defendants' motion to dismiss the state law claims against Ramsey, Gough, Shubert, and Gonzalez without leave to amend. In addition, the Court will grant Defendant Wayt's Motion to Dismiss, but with leave to amend.

# LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for

relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued 2 months after *Iqbal*).[1] The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

---

[1] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .." Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley,* it is uncertain whether the language in *Harris v. Amgen* has much of a life expectancy.

# BACKGROUND

1. **Factual Background**

In his Complaint, Hanson alleges Fifth, Eighth, and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983. The defendants in these motions are all law enforcement officers in various positions and from different counties. Ramsey was the elected Sheriff of Blaine County, Idaho. Gough, Shubert, and Gonzalez were all members of Gooding County law enforcement. Gough was the sheriff; Shubert was a Corporal; Gonzalez was an Officer. Wayt was a Parole Officer for the State of Idaho.

Wayt arrested Hanson around September 19, 2014 for an alleged parole violation. *Compl.* ¶ 16. At the time of his arrest, Hanson allegedly informed Wayt he had recently had surgery on his right eye and required prescription eye drops. *Id.* at ¶ 17. Wayt refused to allow him to take his prescription eye drops with him to the county jail. *Id.*

Hanson was booked into Blaine County Jail and later transferred to Gooding County jail on September 22, 2014. He alleges that, despite informing members of the County Jails of his need for the eye drops, that the Defendants deprived him of his eye drops for at least six days. *Id.* at ¶ 18–22. Hanson experienced retinal detachment in his right eye requiring two surgical procedures to repair it. As a result, he has suffered permanent vision lost in his right eye. *Id.* at ¶ 24.

## ANALYSIS

1.  **Motion to Dismiss (Dkt. 17) – Bond Requirement**

Ramsey, Gough, Shubert, and Gonzalez[1] seek to dismiss the state law claims for failure to post bond under Idaho Code § 6-610. Section 6-610 requires that "[b]efore any civil action may be filed against any law enforcement officer or service of civil process on any law enforcement officer," plaintiffs must post a bond prior to or simultaneously with the filing of the complaint. I.C. § 6-610(2). Although not a jurisdictional requirement, posting bond is "mandatory" and a failure to post bond requires the trial court judge to dismiss the claims immediately. I.C. § 6-610(5).

However, a court may waive costs, fees, and security for indigent plaintiffs. *See* Idaho Code § 31-3220. Pursuant to § 31-3220, a party may file an affidavit stating that he is indigent and unable to pay fees associated with the case. *Id.* Section 31-3220(2) states that a "court may authorize the *commencement* . . . of any action" without prepayment of fees or security if the plaintiff properly pleads indigency. *See* Idaho Code § 31-3220(2)(emphasis added).

Hanson argues that courts have been lenient with the timing of the bond and that the Court is not required to dismiss it. The Court disagrees. The Idaho Supreme Court has held that § 6-610(2) "plainly requires a plaintiff to post bond before it initiates suit

---

[1] I.C. § 6-610 applies only against "law enforcement officers." Therefore, any claims against defendants Blaine County or Gooding County are not subject to the motion to dismiss under the statute.

against a law enforcement officer." *Allied Bail Bonds, Inc. v. Cty. of Kootenai*, 258 P.3d 340, 345 (Idaho 2011). In addition, Idaho case law indicates that any request for a bond waiver should be done prior to filing the complaint. In *Allied*, the court dismissed the claims despite the plaintiff filing an affidavit the next day. In *Beehler*, the court explained, "[i]f the Beehlers were unable to afford the security bond as they claim, they could have availed themselves of I.C. § 31–3220 in order to request a waiver of the section 6–610 bond requirement prior to filing their complaint." *See Beehler v. Fremont Cty.*, 182 P.3d 713, 717 (Idaho Ct. App. 2008).

Here, it is undisputed that Hanson failed to post the required bond when he filed his complaint. He did submit a sworn affidavit asserting indigency – but almost five months after filing his complaint and only after the defense raised the issue that he had not posted a bond. Considering *Allied* and other Idaho case law, it is clear that Hanson has failed to comply with the statute by posting a bond or submitting a request for relief from that bond prior to or contemporaneously with the filing of the complaint. Therefore, the Court will dismiss the state law claims against Ramsey, Gough, Shubert, and Gonzalez for failure to post bond. Moreover, the dismissal is without leave to amend because Hanson cannot unwind the clock to cure his failure to timely post a bond.

2.  **Motion to Dismiss (Dkt. 30) – Immunity for Defendant Wayt**

Hanson alleges that Wayt was deliberately indifferent towards his serious medical needs by refusing to transport his prescription eye drops to the county jail after being told that Hanson required them because of a recent eye surgery. Wayt argues he is immune in

his official capacity under the Eleventh Amendment and in his individual capacity under qualified immunity.

As a preliminary matter, the Court notes that it does not read the Complaint to sue Wayt in his official capacity, and Hanson makes no such argument in his briefs. Therefore, the Court will not discuss immunity under the Eleventh Amendment, but will only address qualified immunity. Additionally, the original motion included a request by Idaho Department of Corrections ("IDOC") to dismiss the claims against it. However, this Court subsequently approved Hanon's Amended Complaint which removed all claims against IDOC. (Dkt. 35). Thus, the motion is moot as to IDOC.

### A. *Fourteenth Amendment –Qualified Immunity*

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011).

In determining whether an officer is entitled to qualified immunity, the Court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, "(1) . . . show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer

would have understood his or her conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). Courts may use their discretion deciding which of the two prongs to analyze first. *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).

To determine whether the right was clearly established, the Court considers Supreme Court and Ninth Circuit case law existing at the time of the alleged acts. *See Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, the district court should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established. *See id.*

The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202 (*citing Wilson v. Layne*, 526 U.S. 603, 615 (1999)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . [but] in the light of pre-existing law the unlawfulness must be apparent." *Creighton*, 483 U.S. 635, 640 (1987). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Ashcroft v. al–Kidd*, 563 U.S. at 741).

### (1) Was the Right Clearly Established?

As a pre-trial detainee, Hanson's rights while in custody arose under the Due Process clause of the Fourteenth Amendment rather than the Eighth Amendment's protection against cruel and unusual punishment. *Gibson v. Cty. Of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). "[T]he due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha [ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'" *Id.* (quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir.1996)). However, a general statement of the law is not "'capable of giving fair and clear warning' to officers." *White v. Pauly*, 137 S.Ct. 548, 552 (2017).

Here, the "contours" of that right are not sufficiently clear that a reasonable officer under these particular circumstances – a parole officer making an arrest, transporting the detainee to the county jail, and refusing to transport detainee's prescription eye drops – would understand that his conduct violated that right. There is no case law holding that an officer under the same circumstances as Wayt violated the Fourteenth Amendment. The case law provided by Hanson does not show that there was a "clearly established right" to transport medication to the jail by an arresting officer. All of the cases cited by Hanson focus on different factors of the deliberate indifference analysis.[2] There is no case law

---

[2] *See Goldstein v. Alvarado*, 2012 WL 4845630 (N.D. Cal. Oct. 10, 2012) (explaining that officers were deliberately indifferent in failing to let detainee bring backpack when he was "high risk"
(Continued)

establishing a clearly established right to receive medical treatment from an arresting officer for a medical condition that is not presenting an immediate threat of harm or pain to the arrestee. Accordingly, the Court finds that Wayt is entitled to qualified immunity.

### B.     *State Created Danger Doctrine*

Hanson, in a single sentence at the end of his brief, argues that Wayt's conduct subjected him to liability under the "state created danger" doctrine. Generally, "the Fourteenth Amendment's Due Process Clause . . . does not confer any affirmative right to governmental aid" and "typically does not impose a duty on the state to protect individuals from third parties." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012)(citing *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (citations and alterations omitted). The "state created danger" doctrine is an exception to this rule, so that liability exists when "the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known and obvious danger.'" *Henry A.*, 678 F.3d at 998.

---

and they were aware of the risk, but the court rendered no findings as to the qualified immunity); *Hiramanek v. Clark*, 2016 WL 4549153 (N.D. Cal. Sept. 1, 2016) (explaining that a failure to give medication would not present a substantial risk of serious harm; not deciding that what medical was required); *Dettamanti v. County f Santa Barbara*, 2014 WL 3427445 (C.D. Cal. May 21, 2014) (explaining that failure to take detainee to hospital during a panic attack was deliberately indifferent.).

To determine whether the "state created danger" doctrine applies, courts must look at "(1) whether any affirmative action of the official placed the individual in danger he otherwise would not have faced; (2) whether the danger was known or obvious; and (3) whether the officer acted with deliberate indifference to that danger." *Id.* at 1002. In other words, Wayt must have known something was going to happen, but ignored the risk and knowingly exposed Hanson to it.

Construed liberally, the complaint can be seen as alleging that Wayt, by refusing to allow him to take his prescription eye drops with him to the jail, placed Hanson in a situation that would otherwise not exist. Nonetheless, Hanson's argument fails to satisfy the last two elements of the "state created danger" doctrine. There are no allegations that Wayt was aware of an immediate and known danger to Hanson if he refused to take the prescription eye drops to the jail. Therefore, the complaint does not adequately allege the facts necessary to assert liability under a "state created danger." The complaint will be dismissed with leave to amend his complaint to allege such facts. However, any amended complaint must allege specific facts about what the immediate and known danger was, and how Wayt was aware of the danger. Simply stating that Wayt did not allow Hanson to take his eye drops is not enough. Furthermore, the allegations must be specific – the Court will not entertain a simple statement that Hanson acted with deliberate indifference.

C.       *ITCA – Immunity*

Hanson alleges Idaho state tort claims similar to those raised in his § 1983 claims. He alleges that Wayt was deliberately indifferent to his medical needs by refusing to take his prescription eye drops to the county jail.

The Idaho Tort Claims Act ("ITCA") "establishes that governmental entities are subject to liability for their own negligent or wrongful acts, and those of their employees who were acting within the course and scope of their employment." *Hoffer v. City of Boise*, 257 P.3d 1226, 1228 (Idaho 2011). However, the ITCA also expressly exempts certain causes of action. *Id.* Idaho Code § 6-904 states,

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which: [1] Arises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

Idaho Code § 9-604.

Here, Hanson has not alleged any facts that would support a finding that Wayt acted with malice or criminal intent. As used in the ITCA, criminal intent means the "intentional commission of what the person knows to be a crime." *James v. City of Boise*, 376 P.3d 33, 51 (Idaho 2016). In addition, malice means, "the intentional commission of a wrongful or unlawful act, without legal justification or excuse and with ill will, whether or not injury was intended." *Anderson v. City of Pocatello*, 731 P.2d 171, 182–183 (Idaho

1987). For the purposes of the ITCA, "it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent." Idaho Code § 6-903(5); *see also Miller v. Idaho State Patrol*, 252 P.3d 1274, 1288 (Idaho 2011) (explaining that the burden is on the plaintiff to show that the defendant acted maliciously or with criminal intent).

Hanson alleges that Wayt was acting within the course of his employment for Idaho Department of Corrections. However, his Complaint lacks enough facts to rebut the presumption that he was acting without malice or criminal intent. The Complaint fails even to use these words in relation to the state law offenses.

Wayt arrested Hanson for a parole violation and transported him to jail without his prescription eye drops. There are no allegations establishing this was a criminal act. Likewise, there are no allegations that Wayt acted with malice towards Hanson by refusing to take his prescription eye drops to the county jail. Therefore, Wayt is entitled to immunity under the ITCA.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss (Dkt. 17) is **GRANTED** for Defendants Ramsey, Gough, Shubert, and Gonzalez and the state law claims are dismissed without leave to amend.

2. Defendant Wayt's Motion to Dismiss (Dkt. 30) is **GRANTED** with leave to amend as explained above.

3. If Plaintiff chooses to file an amended complaint to correct the deficiencies noted herein, he must do so within twenty (20) days after the date of this decision.

DATED: August 28, 2017

B. Lynn Winmill
Chief Judge
United States District Court