UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT HANSON,<br><br>    Plaintiff,<br><br>v.<br><br>BLAINE COUNTY, GENE D. RAMSEY, GOODING COUNTY, SHAUN GOUGH, KEVIN WAYT, WILLIAM SHUBERT, JESUS GONZALEZ, JUDITH PETERSON, AND JOHN DOES I-X,<br><br>    Defendants. | Case No. 1:16-cv-00421-BLW<br><br>MEMORANDUM DECISION AND ORDER |

# INTRODUCTION

The Court has before it Defendant Kevin Wayt's Second Motion to Dismiss Plaintiff's Second Amended Complaint and Demand for Jury Trial (Dkt. 49). Earlier, the Court addressed motions to dismiss by all defendants. The Court denied some motions, granted some motions with leave to amend, and granted some motions without leave to amend. Defendant Kevin Wayt's motion was granted with leave to amend in part. Hanson amended his complaint, but Wayt once again asks the Court to dismiss the claims against him. Hanson failed to respond to the motion, and the deadline for such a response has passed.

# LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for

relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued 2 months after *Iqbal*).[1] The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

## BACKGROUND

The factual background is set forth in detail in the Court's earlier Memorandum Decision and Order. Dkt. 44. The Court will not repeat all of it here, but will generally note that as to Wayt, Hanson alleges that Wayt arrested him for a parole violation on

---

[1] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .." Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley,* it is uncertain whether the language in *Harris v. Amgen* has much of a life expectancy.

September 19, 2014. At the time of his arrest, Hanson informed Wayt that he had recently had eye surgery and required prescription eye drops. Wayt refused to allow Hanson to take his prescription eye drops with him to the county jail. *Id.*

Hanson's initial claim against Wayt was that Wayt was deliberately indifferent towards his serious medical needs by refusing to transport his prescription eye drops to the county jail. Wayt argued he was entitled to qualified immunity. The Court agreed, and granted Wayt qualified immunity. But the Court allowed Hanson to amend his complaint against Wayt to allege facts which would satisfy the "state created danger" doctrine. In granting Hanson leave to amend, the Court explained that, construed liberally, the original complaint can be seen as alleging that Wayt placed Hanson in a situation that would otherwise not exist. But the Court concluded that Hanson failed to satisfy the last two elements of the "state created danger" doctrine. There were no allegations that Wayt was aware of an immediate and known danger to Hanson if he refused to take the prescription eye drops to the jail. Therefore, the complaint did not adequately allege the facts necessary to assert liability under a "state created danger." The Court cautioned Hanson that if he amended his complaint, he must allege specific facts about what the immediate and known danger was, and how Wayt was aware of the danger. Simply stating that Wayt did not allow Hanson to take his eye drops would not be enough to allege a valid claim. Furthermore, the Court explained that the allegations must be specific – the Court stated that it would not entertain a simple statement that Hanson acted with deliberate indifference.

## ANALYSIS

In his Amended Complaint, Hanson alleges that Wayt was a parole officer who arrested him for a parole violation. He states that he told Wayt on at least three occasions the details of his recent series of eye surgeries, and that he required his prescription eye drops to avoid complications. He states that Wayt refused to let him take the eye drops with him to jail, and that Wayt told him that he would be seen by medical staff at the jail. He further states that after he was returned to the jail after an appointment with an optometrist, he told Wayt that he had lost sight in his right eye and that he would likely need more surgery, to which Wayt replied, "I don't care, maybe IDOC will."

As explained in the Court's earlier decision, "the Fourteenth Amendment's Due Process Clause . . . does not confer any affirmative right to governmental aid" and "typically does not impose a duty on the state to protect individuals from third parties." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012)(citing *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (citations and alterations omitted). The "state created danger" doctrine is an exception to this rule, so that liability exists when "the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known and obvious danger.'" *Henry A.*, 678 F.3d at 998.

To determine whether the "state created danger" doctrine applies, courts must look at "(1) whether any affirmative action of the official placed the individual in danger he otherwise would not have faced; (2) whether the danger was known or obvious; and (3) whether the officer acted with deliberate indifference to that danger." *Id.* at 1002. In other

words, Wayt must have known something was going to happen, but ignored the risk and knowingly exposed Hanson to it.

Taking the facts in the light most favorable to Hanson, the Court can conclude that Wayt arrested Hanson and transported him to the jail. The Court can conclude that Hanson made his eye condition and need for prescription eye drops known to Wayt during that time. The Court can conclude that Wayt did not allow Hanson to take his eye drops with him to the jail, but that he informed Hanson that he could get medical care at the jail. There is no evidence that Wayt told the jail what he knew about Hanson's eye condition.

Under these fleshed out allegations, the Court now concludes that Wayt did not place Hanson in danger he otherwise would not have faced. At most, Wayt did not allow Hanson to bring and use his eye drops during transport to the jail. But there is no allegation that Hanson's loss of sight or other complications occurred during this relatively short period of time. Wayt transported Hanson to a jail facility with medical care, and specifically told Hanson that he could get medical care at the jail. Whether Hanson got the care he needed at the jail, and what Hanson did when he arrived at the jail as far as requesting a prescription for his eyes is left for another day. But it cannot be said that Wayt placed Hanson in danger by transporting him to a jail with medical care. It cannot be said that Wayt knew Hanson was in danger when he placed him in the custody of a jail with medical care. And it certainly cannot be said that Wayt was deliberately indifferent to any potential danger when he specifically informed Hanson that he could

obtain medical care at the jail. Finally, the Court notes that Hanson likely does not dispute these conclusions given his failure to even respond to the motion to dismiss. Accordingly, the Court will grant the motion to dismiss.

## ORDER

IT IS ORDERED:

1. Defendant Kevin Wayt's Second Motion to Dismiss Plaintiff's Second Amended Complaint and Demand for Jury Trial (Dkt. 49) is Granted.

DATED: October 27, 2017

B. Lynn Winmill
Chief Judge
United States District Court